IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | Criminal No. SAG-21-0287 |
| **DAYTRON JOHNSON,** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On July 29, 2021, a grand jury returned an indictment charging Daytron Johnson with possession of a firearm by a prohibited person, possession with intent to distribute a controlled substance, and possession of a firearm in furtherance of a drug trafficking offense. ECF 1. At an initial appearance and detention hearing on November 8, 2021, United States Magistrate Judge A. David Copperthite issued an order of pretrial detention. ECF 11. On December 22, 2021, Johnson filed a motion to reopen the detention hearing to seek temporary pretrial release in light of the COVID-19 outbreak at the Chesapeake Detention Facility ("CDF"). ECF 19. Judge Copperthite reconsidered his order of detention and considered the propriety of temporary release, but ultimately affirmed his previous detention order. ECF 28. Johnson filed a motion appealing the decision to this Court, which has now been fully briefed. ECF 30, 33, 35. This Court has reviewed the briefing, Johnson's medical records, and the recording of the detention hearing held before Judge Copperthite, and has asked the United States Marshals Service ("USMS") to provide information regarding Johnson's vaccination status. In light of the extensive record, no additional hearing is necessary to resolve this appeal. *See* Loc. R. 105.6 (D. Md. 2021); *United States v. Martin*, 2020 WL 1274857, at \*3 (D. Md. Mar. 17, 2020) (finding "ample authority for the conclusion that the Court may decide [an appeal of a detention or release order] on the filings . . .

as opposed to a hearing."). For the reasons that follow, Johnson's appeal will be denied without prejudice to its renewal under certain conditions.

## I. FACTUAL BACKGROUND

Johnson is a 27-year-old lifelong resident of Baltimore. Prior to his incarceration for the instant offense, he lived for one year with his girlfriend, their infant, and her 5-year-old child from a prior relationship. His girlfriend is unemployed and has no prior criminal history. It has been represented to the Court that she received her first dose of COVID-19 vaccine this week. The two children in the home are not vaccinated, although one appears to be of an age where the vaccine could be administered.

Johnson is clinically obese and has diabetes, high blood pressure, and asthma. Medical records from CDF indicate that Johnson's health conditions are generally well-controlled and that he often declines the recommended diabetes treatment.

Johnson received his first dose of an mRNA COVID-19 vaccine upon his arrival at CDF on November 11, 2021. Despite his repeated requests, he has not received a second dose as recommended.

## II. STANDARD OF REVIEW

Pretrial detention and release are governed by the Bail Reform Act ("BRA"), 18 U.S.C. §§ 3141, *et seq.* The government is permitted to seek pretrial detention of a defendant who poses a serious risk of flight. *Id.* § 3142(f)(2)(A). The BRA instructs the Court to seek "the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(c)(1)(B). However, if the Court finds after the hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as

required and the safety of any other person and the community," the court "shall order the detention of the person before trial." *Id.* § 3142(e)(1).

 The Court's determination is governed by four factors:

(1)   the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2)   the weight of the evidence against the person;

(3)   the history and characteristics of the person, including –

  (A)   the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

  (B)   whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4)   the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

*Id.* § 3142(g).

 Pursuant to 18 U.S.C. § 3145(a)(1), the attorney for the Government may file a motion for revocation of an order of release issued by a magistrate judge. This Court reviews the magistrate judge's ruling *de novo*, and makes "an independent determination of the proper pretrial detention or conditions of release." *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam) (unpublished); *see also United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989).

**III.     ANALYSIS**

In his instant motion, Johnson seeks temporary release under § 3142(i).  As described above, when considering whether there are any conditions of pretrial release "that will reasonably assure" a particular defendant's appearance in court, and the safety of the community, 18 U.S.C. § 3142(f), Congress carefully prescribed four factors in the BRA that a court must consider, *id.* § 3142(g).  Judge Copperthite considered those factors when issuing his orders of detention.  None of those factors refers specifically to whether the conditions of incarceration threaten the defendant's well-being.  Instead, Congress focused the required inquiry on the defendant's risk of nonappearance and the danger that the defendant's release would pose to other individuals.  In some circumstances, clearly, a particular defendant's medical condition could reduce that defendant's risk of flight or danger to the community, and the health condition would therefore fall within the factors appropriately considered in the context of § 3142(g).  Absent those circumstances, however, a particular defendant's health conditions, and the possible risks posed to the defendant by incarceration, do not impact the § 3142(f) and (g) analysis.  *See, e.g.*, *United States v. Clark*, 448 F. Supp. 3d 1152, 1156 (D. Kan. 2020) ("A defendant's concerns that he or she would face heightened COVID-19 risks if incarcerated would not typically factor into a § 3142(f) analysis, which focuses on whether the court can fashion conditions of release that will reasonably assure the defendant is not a risk of nonappearance or a risk of harm to any others or the community.  The risk of harm *to the defendant* does not usually bear on this analysis."); *United States v. Lawton*, 2020 WL 1984897, at *1 (S.D. Ga. Apr. 27, 2020) (same); *United States v. Whyte*, 2020 WL 1911187, at *4 (D. Conn. Apr. 8, 2020) (analyzing medical conditions under § 3142(i)); *United States v. Aguirre-Maldonado*, 2020 WL 1809180, at *1 (D. Minn. Apr. 9, 2020) ("While the Court appreciates the unprecedented nature of the COVID-19 pandemic, Defendant

has offered no reason why the pandemic would reduce his risk of nonappearance or the risk that he poses to the community.").

However, as will be discussed below, the COVID-19 pandemic is relevant in the assessment of whether a defendant's temporary release might be appropriate under § 3142(i), and will be considered fully in that context, in accordance with the Fourth Circuit's order in *United States v. Creek*, Criminal No. 20-4251 (4th Cir. Apr. 15, 2020), ECF No. 402 (directing the District Court to consider in the first instance "the severity of the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at the facility where he is being held, and whether that risk, balanced against the other Bail Reform Act factors, rises to the level of a 'compelling reason' for temporary release under 18 U.S.C. § 3142(i).").

### A.     De Novo Assessment of the § 3142(f) and (g) Factors

Taking into account the nature of the charges against Johnson, the weight of the evidence, and Johnson's history and characteristics, including his current medical conditions, this Court remains persuaded that Johnson poses a significant risk of danger to the community if released, particularly in light of the statutory presumption that he should remain detained. *See* ECF 11 (finding applicable the rebuttable presumption against pretrial release provided in § 3142(e)(3)). Under the § 3142(g) standards, then, this Court concludes that no release condition or combination of conditions would reasonably assure community safety, and that his continued detention is warranted.

The analysis begins with the nature and circumstances of the charged offense. The government has proffered that it has video evidence of Johnson possessing a firearm in furtherance

of drug trafficking activities, despite his having a prior felony conviction. Such conduct poses a grave risk to public safety.

Turning to Johnson's history and characteristics, his criminal history suggests an enhanced risk of danger to the community. He either committed the instant offense while still under state supervision for a prior drug distribution offense or on the first day he completed such supervision. Either scenario indicates that Johnson was not rehabilitated and poses a continuing risk to community safety.

Moreover, and quite troubling to the Court, law enforcement agents went to Johnson's residence on August 16, 2021 to serve a warrant for his failure to appear at a Zoom proceeding. Johnson's reaction to the agents' presence was to jump out the window and flee. That reaction does not persuade this Court that Johnson is a particularly good candidate for supervision by Pretrial Services.

As noted below, as part of assessing the history and characteristics of the defendant, this Court has considered Johnson's medical condition and has reviewed his medical records from the detention facility. Johnson has a litany of medical diagnoses. However, despite the fact that he has frequently declined diabetes care recommended by his medical providers, he appears to be in relatively good health. The medical diagnoses appear to be longstanding health conditions, not new ones, and it appears that he would have had the same conditions at the time he allegedly committed the instant offense. Thus, this Court is not persuaded that Johnson's health conditions in any way decrease the danger he poses to the community upon release. He therefore has not rebutted the presumption that he should be detained as a danger to the community.

### B.     Request for Temporary Release Pursuant to § 3142(i)

Having found detention appropriate under § 3142(f), this Court must consider temporary release pursuant to § 3142(i), which permits "the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." This Court must assess whether the COVID-19 pandemic provides "another compelling reason" justifying temporary release under § 3142(i). Prior to the instant pandemic, this provision was "sparingly" used to justify temporary release for specific medical treatments, such as cancer surgery or chemotherapy. *See, e.g.*, *United States v. Hamilton*, 2020 WL 1323036, at *2 (E.D.N.Y. March 23, 2020). Courts have been considering and employing § 3142(i) in a more widespread fashion in the context of COVID-19. The well-reasoned opinion in *Clark*, 448 F. Supp. 3d at 1157, sets forth four factors to be considered: (1) the original grounds for detention; (2) the specificity of a defendant's COVID-19 concerns; (3) the extent to which the proposed release plan is designed to mitigate or exacerbate other COVID-19 risks to the defendant; and, (4) the likelihood that a defendant's release would increase the COVID-19 risks to others.[1] The Defendant bears the burden of establishing those factors. *See United States v. Sanders*, 450 F. Supp. 3d 1123, 1127 (D. Kan. 2020). "The question for the Court is whether the COVID-19 health risks to the Defendant, should he remain detained, outweigh those traditional Section 3142(g) factors *and* the COVID-19 health risk to the community that Defendant's release could occasion." *United States v. Hernandez*, No. 19-cr-00158-PX-9, slip op. at 5-6 (D. Md. Apr. 29, 2020) (emphasis in original). As the Fourth Circuit described in *Creek*, this court must weigh "the

---

[1] While *Clark* is not binding, this Court finds its rationale both persuasive and instructive, as have numerous courts around the country, including in this District. *See, e.g.*, *United States v. Green*, 2020 WL 1873967, at *3 (D. Md. April 15, 2020).

severity of the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at the facility where he is being held, and whether that risk, balanced against the other Bail Reform Act factors, rises to the level of a 'compelling reason' for temporary release under 18 U.S.C. § 3142(i)." No. 20-4251 (4th Cir. Apr. 15, 2020), ECF No. 402.

The specificity of Johnson's COVID-19 concerns weigh somewhat in favor of his temporary release. As noted above, Johnson has multiple medical conditions elevating his risk of COVID-19 complications. In combination with his uniquely heightened risk, Johnson has only been provided the first dose in the mRNA vaccine series, on November 11, 2021. Johnson represents that he has been asking for the second dose but has not received a response. This Court's inquiry into the status of Johnson's vaccinations revealed that the medical providers at CDF wait until they have enough vaccine candidates to use an entire vial before opening one, in light of the cost and scarcity of the vaccine doses. Accordingly, CDF concedes that it has not provided the second vaccine dose to Johnson, although it expects to receive new vaccine stock shortly and has represented that it will vaccinate him.

This Court must consider Johnson's COVID-19 concerns in light of the present viral conditions in Maryland. It appears that the most common variant at this point, the omicron variant, is less deadly than prior COVID-19 strains.[2] However, this Court is not privy to whether the current outbreak at CDF consists only of omicron cases or of delta cases, which remain somewhat

---

[2] Once again, in the context of these release motions, federal courts are being placed in the position of assessing individuals' health risks from a pandemic that has defied the most learned experts' attempts to predict its course. Public and scientific understanding of COVID-19 and its variants changes on an almost daily basis, as does the situation with respect to viral prevalence in various communities. While this Court has done its best to apply the most up-to-date understanding of the scenarios in question, it has no doubt that this opinion will be almost immediately obsolete as conditions change.

8

existent to a decreasing degree.  Further, it is widely recognized that full vaccination and boosting does not eliminate all risk of infection or all risk of severe complications, even from the milder omicron variant.  Persons with risk factors who have been fully vaccinated and even boosted remain at some risk, and the risk appears greatly enhanced for those who are not fully vaccinated.  Johnson, through no fault of his own, does not enjoy the protections of full vaccination, thus placing him at particular risk.  CDF's track record with respect to Johnson's vaccination does not give this Court confidence that his particularized risk is being addressed.

Johnson makes other arguments about the generalized conditions at CDF for all detainees, including the type of masks the facility is providing to its inhabitants.  This Court does not doubt or dispute that persons in a congregate living situation are at increased risk of viral transmission.  Further, this Court understands that serious questions have been raised about whether the protective measures at CDF could be improved.  The overall conditions at CDF, however, are at issue in separate litigation and are not appropriately determined in the context of this detention dispute.  *See Hernandez*, No. 19-cr-00158-PX-9, slip op. at 5 (stating, in a similar context, "Although the pendency of that action does not restrict this Court from assessing Defendant's motion under the Bail Reform Act (which, necessarily, requires an *individual* assessment of Defendant's situation to include COVID-19 risk), some recognition of principles of comity is appropriate to promote the twin goals of avoiding 'an unnecessary burden on the federal judiciary' and preventing 'the embarrassment of conflicting judgment.'" (quoting *In re Naranjo*, 768 F.3d 332, 348 (4th Cir. 2014) and *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979))).  Thus, it would be inappropriate for this Court to consider the situation at CDF more broadly, other than in the context of the simple application of the BRA to Johnson.  Ultimately, Johnson has established that he is presently at a particularly increased risk of serious

complications from the COVID-19 virus, by virtue of his continued detention at CDF without having the benefit of full vaccination.

The final two *Clark* factors, though, involve the nature of the proposed release plan, including the extent to which it is designed to mitigate Johnson's exposure to the COVID-19 virus, and the risk that Johnson's release would pose to the community. Clearly, release would allow Johnson to immediately avail himself of the second dose of the mRNA vaccine, which would be beneficial to him. But this is not a situation where the degree of outbreak at CDF is grossly disproportionate to the outbreak in the remainder of society. Maryland is positively overrun with COVID-19 infection at present, with a record number of daily infections and a test positivity rate approaching 30%. *See Maryland COVID-19 Data Dashboard*, MD. DEP'T OF HEALTH: COVID-19 OUTBREAK, https://coronavirus.maryland.gov/ (last visited Jan. 10, 2022).[3] Those numbers, moreover, likely underrepresent the actual prevalence of the virus, given the number of asymptomatic individuals and the number of persons who test positive using at-home antigen tests that are not reported in the official tally.

Johnson's proposed release plan would place him in a residence with an adult who is not fully vaccinated and with two unvaccinated children. As noted above, the risk of both viral infection and severe complications is greatly enhanced in persons who have not been fully vaccinated. Thus, Johnson's plan would involve removing him from a facility in which COVID-19 is rampant to a residence where he would risk passing that virus to three not-fully-vaccinated individuals. Moreover, those individuals, who are at increased risk themselves from the rampant

---

[3] This Court may take judicial notice of factual information set forth by the Maryland Department of Health in the ordinary course. *See Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (court may take judicial notice of voting-age population statistics which are publicly available on the official redistricting website of the Virginia Division of Legislative Services).

societal transmission, would be at increased risk to transmit the virus to Johnson, because he too is not fully vaccinated.

This Court understands that the proposed third-party custodian has begun the vaccination process but will not be fully vaccinated until receipt of two doses of the vaccine, plus the two-week period necessary for the vaccines to take fully effect.  This Court also understands that there may be alternative living arrangements for the minor unvaccinated children, although the feasibility of those arrangements in light of the children's ages is questionable.

For those reasons, this Court does not presently believe that, under present circumstances, Johnson has met his burden to establish a compelling reason justifying his temporary release from pretrial detention pursuant to 18 U.S.C. § 3142(i).  He continues to pose a danger to the community.  While this Court acknowledges significant COVID-19 risk to Johnson from remaining in the communal living facility at CDF without full vaccination, it does not believe that the proposed release plan greatly decreases the risk to Johnson, and it believes that the proposed release plan would increase the risk to the health of others (if not also to Johnson himself).  This Court is hopeful that CDF will offer Johnson his second vaccine dose promptly as promised.  The Court will make periodic inquiries to the USMS for updated medical records to track the progress of his vaccination status.  If, before that occurs, the proposed third party custodian is able to provide documentary evidence of full vaccination, this Court will reconsider whether temporary release is appropriate to facilitate Johnson's completion of his vaccine series.

## IV. CONCLUSION

For the reasons set forth above, Johnson's Appeal, ECF 30, is DENIED without prejudice. An accompanying Order follows.


Dated:  January 11, 2022                                             /s/
                                                            Stephanie A. Gallagher
                                                            United States District Judge